UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/17/2024
```

-----------------------------------------------------------------------X
                                                                       :
SCOTTSDALE INSURANCE COMPANY,                                          :
                                                                       :
                          Plaintiff,                                   :
                                                                       :
                                                                       :        19-cv-7477 (LJL)
          -v-                                                          :
                                                                       :        OPINION AND ORDER
                                                                       :
PATRICK MCGRATH, AH DB KITCHEN                                         :
INVESTORS LLC, and CASTLEGRACE EQUITY                                  :
INVESTORS, LLC,                                                        :
                                                                       :
                          Defendants.                                  :
                                                                       :
-----------------------------------------------------------------------X
                                                                       :
PATRICK MCGRATH,                                                       :
                                                                       :
                          Third-Party Plaintiff,                       :
                                                                       :
          -v-                                                          :
                                                                       :
SCOTTSDALE INSURANCE COMPANY,                                          :
                                                                       :
                          Third-Party Defendant.                       :
                                                                       :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Scottsdale Insurance Company ("Scottsdale") and Defendants Patrick M.

McGrath, AH DB Kitchen Investors LLC ("AH DB"), and Castlegrace Equity Investors, LLC

("Castlegrace") (collectively referred to herein as "McGrath" or "Defendants") each make

motions in limine in this case scheduled for trial on November 4, 2024. Dkt. Nos. 132, 137.

Scottsdale additionally moves for the Court to take judicial notice of certain adjudicative facts

pursuant to Federal Rule of Evidence 201. Dkt. No. 135. By Memorandum and Order dated

October 7, 2024, the Court granted Scottsdale's motion to strike Sections A and B of McGrath's

motions in limine, with the exception of Section A(d).  Dkt. No. 151.

## BACKGROUND

Familiarity with the tangled history of this case is presumed.

McGrath is an individual residing in New York, New York.  Dkt. No. 1 ¶ 2.  He is the

sole member of Aristone Hospitality LLC ("Aristone") which, in turn, is the sole member of AH

DB.  *Id.* ¶ 3.  He is also the sole member of Castlegrace.  *Id.*  McGrath is also an officer and

owner of AH DB and Castlegrace.  *Id.* ¶ 19.

Through AH DB, McGrath was a partial owner of Rocky Aspen, LLC ("Rocky Aspen")

which was formed on or about April 24, 2013, by AH DB and a wholly-owned subsidiary of

Watershed Ventures, LLC ("Watershed") named Rocky Aspen Management 204, LLC ("RAM

204"), to open and operate a restaurant in Aspen, Colorado.

Scottsdale is an insurance company duly organized and existing under the laws of the

State of Ohio with its principal place of business located in Scottsdale, Arizona.  Dkt. No. 1 ¶ 1.

It is the insurer on a Business and Management Indemnity Policy number EKS3172343 (the

"Policy") issued to Watershed covering the policy period November 6, 2015, to November 6,

2016 (the "Policy Period").  *Id.* ¶ 7.  The Policy provides coverage for "Loss" of "Directors and

Officers" for which the "Directors and Officers" are not indemnified by the "Company" and

which the "Directors and Officers" have become legally obligated to pay by reason of a "Claim"

made against the "Directors and Officers" during the Policy Period and reported to Scottsdale for

any "Wrongful Act" taking place prior to the end of the Policy Period.  *Id.* ¶ 8.  The Policy

defines "Company" to mean the "Parent Company" and any "Subsidiary," and the Parent

Company includes Watershed and DB Management LLC.  *Id.* ¶ 10.  "Directors and Officers" is

defined to include "a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company." *Id.* ¶ 9(a).

The case arises out of the business failure of Rocky Aspen. Pursuant to Rocky Aspen's operating agreement, AH DB and RAM 204 each owned half of Rocky Aspen in the form of fifty percent of the voting units and fifty percent of the economic units. *See Scottsdale Ins. Co. v. McGrath*, 506 F. Supp. 3d 216, 219 (S.D.N.Y. 2020). Also pursuant to the operating agreement, AH DB was to make financial capital contributions to Rocky Aspen, while RAM 204 contributed in kind a license to use the Watershed brand and conceptual design. *Id.* AH DB failed to meet its funding obligations and, as a result, on March 25, 2015, forfeited its voting units. In April 2015, after McGrath forfeited his voting units but while he remained a co-manager of Rocky Aspen, McGrath arranged for Hanford Holdings LLC ("Hanford") to loan $700,000 to Castlegrace so that Castlegrace could infuse the proceeds of that loan into Rocky Aspen for construction of the restaurant. Dkt. No. 14 ¶ 81. In the summer of 2015, when Rocky Aspen sought additional funds to finance the restaurant's completion and opening costs, McGrath arranged for Hanford to loan Rocky Aspen $3,200,000, $700,000 of which would be used to retire the debt outstanding from Castlegrace and the remaining $2,500,000 of which would be used for Rocky Aspen. *Id.* ¶¶ 82–83.

McGrath was removed by RAM 204 as a co-manager of Rocky Aspen on January 5, 2016. *See Scottsdale Ins.*, 506 F. Supp. 3d at 220. On or about March 11, 2016, Rocky Aspen filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Colorado. *Id.* at 220–221. On April 16, 2016, Watershed filed a claim against McGrath in the bankruptcy proceeding. *See Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 340 (S.D.N.Y. 2021). On June 8, 2016, RAM 204 filed claims against Hanford in the Southern District of New

York, and Hanford filed counterclaims or third-party claims against McGrath, Watershed, Aristone, Castlegrace, and AH DB (the "Hanford Litigation"). Dkt. No. 68 ¶ 14. As to McGrath specifically, Hanford demanded he pay a personal guaranty associated with the loan. Dkt. No. 69 ¶ 40. On November 9, 2016, Watershed provided Scottsdale a notice of claim under the Policy in connection with the Hanford Litigation. *See Scottsdale Ins.*, 549 F. Supp. 3d at 340. Scottsdale responded that RAM 204, McGrath, AH DB, Aristone, and Castlegrace were not Insureds under the Policy. *Id.*

On June 7, 2019, the trustee in the bankruptcy action asserted an avoidance claim against McGrath. *Id.* The claim asserted that Rocky Aspen had been damaged by two monetary transfers that were allegedly made on July 31, 2015, in connection with the Hanford loan and for the benefit of McGrath, AH DB, and Castlegrace. Dkt. No. 1 ¶ 25. The trustee demanded that Defendants pay a certain sum to resolve the Adversary Proceedings (the "Demand"). *Scottsdale Ins.*, 549 F. Supp. 3d at 340.

Defendants sought coverage for the Demand and the Adversary Proceedings under the Policy (the "Claim"). Dkt. No. 1 ¶ 27. Scottsdale declined coverage on July 15, 2019, informing counsel for Defendants in writing of its position that there was no coverage for the Claim under the Policy because (1) Defendants are not Insureds under the Policy, (2) the claim does not allege that McGrath committed any Wrongful Acts as that term is defined in the Policy because the Trustee does not assert that McGrath committed any wrongdoing while acting in his capacity as a Director or Officer under the Policy or solely by reason of his serving in such capacity; (3) the Subsidiary Exclusion under the Policy precludes coverage for the Claim; and (4) Defendants failed to provide Scottsdale with timely notice of the Claim in accordance with the notice and reporting requirements of the Policy. *Id.* ¶ 28.

## PROCEDURAL HISTORY

On August 9, 2019, Scottsdale filed this action with a complaint in four counts. Count I seeks a declaratory judgment that McGrath is not an insured under the Policy. Dkt. No. 1 ¶¶ 30–32. Count II seeks a declaratory judgment that the Claim does not allege Wrongful Acts because all of the wrongdoing alleged in the Claim took place prior to January 6, 2016. *Id.* ¶¶ 33–35. Count III seeks a declaratory judgment that the Subsidiary Exclusion of the Policy precludes coverage of the Claim. *Id.* ¶¶ 36–38. Count IV seeks a declaratory judgment that Defendants did not provide Scottsdale with timely notice of the Claim as required by the Policy and therefore that there is no coverage for the Claim under the Policy. *Id.* ¶¶ 39–41.

On October 22, 2019, Defendants answered the complaint and filed counterclaims against Scottsdale and filed a third-party claim against Watershed. Dkt. No. 14. In his first counterclaim, McGrath seeks a declaratory judgment that he is an Insured under the Policy. *Id.* ¶¶ 125–137. McGrath's second counterclaim asserts a claim for bad faith breach of insurance contract, *id.* ¶¶ 138–147, and his third counterclaim asserts a claim for breach of the duty to defend, *id.* ¶¶ 148–158. McGrath claims that Scottsdale had a duty to defend him both in connection with the Demand in the bankruptcy proceeding and in connection with the Hanford Litigation. *Id.*[1]

On June 22, 2020, Scottsdale moved, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on Counts I–III of its complaint. Dkt. No. 36. The Court issued an Opinion and Order on December 11, 2020, denying Scottsdale's motion. Dkt. No. 53.

---

[1] Defendants also asserted third party claims against Watershed for aiding and abetting breach of the duty to defend, *id.* ¶¶ 159–163, fraudulent concealment, *id.* ¶¶ 164–170, and failure to disclose material information, *id.* ¶¶ 171–177, and a counterclaim and third-party claim against all Defendants for an equitable lien, *id.* ¶¶ 178–182. Watershed was never served in this case and was voluntarily dismissed on February 9, 2024. Dkt. No. 104.

Scottsdale's motion presented a single question: whether Rocky Aspen was a Subsidiary of Watershed as defined in the Policy during the time McGrath served as co-manager. The Court concluded that Rocky Aspen became a Subsidiary of Watershed on March 25, 2015, when, pursuant to the agreement between AH DB and RAM 204, AH DB forfeited all of its Voting Units in Rocky Aspen and when, as a result, Watershed, through RAM 204, alone had the sole right to appoint, remove and replace co-managers of the joint venture. *Id.* at 13–14.

On April 15, 2021, Scottsdale made a motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Defendants' second counterclaim asserting a claim for bad faith and the prayer in the counterclaim for consequential and punitive damages. Dkt. No. 62. The Court granted that motion in its entirety in an Opinion and Order dated July 19, 2021. Dkt. No. 72. The Court concluded that McGrath had not identified facts that would support a claim for bad faith liability. *Id.* at 13. The Court also struck the prayer for relief seeking consequential and punitive damages. *Id.* at 19–31. As a result, McGrath was left only with his claim for breach of the duty to defend, with damages within the policy limit.

After the Court rendered its two summary judgment decisions, the parties entered into a Stipulated Conditional Final Judgment ("SCJ") which was intended to expedite consideration of the Court's two summary judgment decisions by the United States Court of Appeals for the Second Circuit. *See* Dkt. No. 80. The parties recognized that the Court's first summary judgment order had determined that McGrath was an Insured as co-manager of Rocky Aspen from May 25, 2015, to January 5, 2016, and that the second summary judgment order had dismissed McGrath's claims for bad faith breach of contract and prayers for consequential and punitive damages. *Id.* ¶ 3. The parties further agreed that the amount of damages awarded to McGrath on his counterclaim for breach of the duty to defend was the $1 million limit of liability

under the policy, but the SCJ further provided that if either the first or second summary judgment order were reversed, reversed in part, or vacated and remanded, in whole or in part, that the terms of the SCJ would no longer be binding.  *Id.* ¶ 7.

Before oral argument, the Second Circuit raised questions about whether the SCJ was a final judgment providing it with jurisdiction to decide the case and directed the submission of letter briefs.  On December 11, 2023, the Second Circuit dismissed the appeal for lack of jurisdiction.  *Scottsdale Ins. Co. v. McGrath*, 88 F.4th 369 (2d Cir. 2023).  It held that the SCJ was not a final judgment because this Court "never ruled on the pivotal question whether Scottsdale had a contractual duty, and breached that duty, to defend McGrath," noting that while the Court "ruled that McGrath is an Insured under the Policy (resolving Count One of Scottsdale's Complaint), that ruling did not end the duty-to-defend inquiry because, in Counts Two through Four of its complaint, Scottsdale advanced several additional arguments disputing its duty to defend" including that "the underlying claims against McGrath do not allege a Wrongful Act within the meaning of the Policy (Count Two); the Policy's Subsidiary Exclusion applies (Count Three); and Defendants failed to provide Scottsdale with timely notice of the claim (Count Four)."  *Id.* at 381.  The Second Circuit noted that it also was "clear that the district court did not resolve Count Four," because it "never addressed whether Defendants provided Scottsdale with timely notice of the claim."  *Id.* at 381 n.11.

The parties submitted motions in limine on September 30, 2024.  Dkt. Nos. 132, 137.  By Memorandum and Order dated October 7, 2024, the Court granted Scottsdale's motion to strike Sections A and B of McGrath's motions in limine with the exception of Section A(d).  Dkt. No. 151.  Each party submitted a response to the opposing party's motions in limine, and Scottsdale

submitted a supplemental response as ordered by the Court to Sections A(d) and E of McGrath's motions.  Dkt. Nos. 156–157, 162.

## DISCUSSION

The purpose of a motion in limine is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).  The decision whether to grant a motion in limine "resides in a district court's inherent and discretionary 'authority to manage the course of its trials.'" *United States v. Ray*, 2022 WL 558146, at *1 (S.D.N.Y. Feb. 24, 2022) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)). "The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).  "Because a ruling on a motion in limine is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

Three key issues appear in the motions in limine: (1) the admissibility and effect of arguments made by Scottsdale before the Second Circuit in support of its contention that the SCJ was a final judgment; (2) the reach of the Court's order on the second motion for summary judgment in limiting the claims for damages by McGrath; and (3) the admissibility of evidence regarding McGrath's actual or alleged wrongful acts.  McGrath argues that Scottsdale admitted before the Second Circuit that the Court's first summary judgment order effectively decided the further questions that the underlying claims alleged Wrongful Acts within the meaning of the

Policy, that the Subsidiary Exclusion did not apply, and that Scottsdale did not have a defense based on timely notice.  McGrath therefore argues that evidence regarding those subjects should be excluded.  Scottsdale argues that the Court's second summary judgment order precluded McGrath from seeking consequential and punitive damages, and that accordingly proof of those damages should be excluded.  The parties also each seek to preclude the other from offering evidence regarding whether McGrath engaged in wrongdoing in connection with Rocky Aspen. The Court turns first to those questions before turning to the remaining motions in limine.

**I.      The Stipulated Conditional Judgment and Related Documents**

In Section X of its motions in limine, Scottsdale moves to exclude from evidence the Stipulated Conditional Judgment (DC20), Scottsdale's Supplemental Brief on Appeal (DX 21), an "MP3" or audio file of oral argument in the United States Court of Appeals for the Second Circuit (DX22), and a transcript of the "MP3" or audio file (DX 23).  Dkt. No. 132 at 18–23. Scottsdale argues that the Stipulated Conditional Judgment, the Supplemental Brief on Appeal, and counsel's oral arguments all constitute settlement materials excludable under Federal Rule of Evidence 408.  Dkt. No. 132 at 18–20.   It also argues that the documents are irrelevant under Rule 401 and prejudicial under Rule 403[2] and that, to the extent that the Court might consider any statements in them to be judicial admissions, the Court should relieve Scottsdale of the effect of those admissions.  *Id.* at 20–23.

In section E of his motions in limine, McGrath seeks a ruling that certain statements made by counsel for Scottsdale orally and in writing before the Second Circuit constitute judicial admissions, binding Scottsdale and precluding it from presenting evidence to the contrary.  Dkt.

---

[2] Scottsdale's memorandum refers to Rule 402.  Dkt. No. 132 at 20.  The Court assumes that Scottsdale intended to refer to Rule 403.

No. 137 at 18–21. In section F, it also seeks a ruling that it be permitted to use an MP3

recording of the oral argument before the Second Circuit. *Id.* at 21–22.

The written statements, from a letter that Scottsdale wrote to the Second Circuit, include

that:

1. This Court's first summary judgment order resolved adversely to Scottsdale Count I of its complaint, which sought a declaration that McGrath was not an insured.
2. This Court's first summary judgment order rejecting Scottsdale's position that Rocky Aspen did not become a Watershed subsidiary until Watershed's exercise of the Watershed Option "was also fatal to Counts II and III of Scottsdale's complaint" and "neither count was viable" after the first summary judgment order was entered. Dkt. No. 108 at 4, *Scottsdale Ins.*, 88 F.4th 369 (21-2641).
3. "Applying the First Order's holding that McGrath was an Insured, Scottsdale concluded that the third-party complaint against McGrath in the Hanford Litigation was covered by the Watershed Policy—a question not resolved by the First Order. The defense costs incurred by McGrath together with pre-judgment interest equaled or exceeded the remaining $1 million limit of liability of the Watershed Policy." *Id.* at 5.
4. "By stipulating to a judgment on McGrath's counterclaim for breach of the duty to defend, Counts IV of Scottsdale's Complaint alleging untimely notice was rendered moot." *Id.*

At oral argument, counsel for Scottsdale stated:

1. "[I]f this court agrees Mr. McGrath is an insured and affirms the first order, then Scottsdale has agreed that Hanford cross-complaint is a covered claim and that its main policy limit should be paid." Dkt. No. 137-13 at 3.
2. "[I]t's our intention that we're not going to revisit the question of coverage if you affirm the first order. We think that's resolved by the first order . . . the question of the timing of the wrongful conduct is resolved by the question of when he became an insured." *Id.* at 5. Counsel further stated that Scottsdale "abandoned" the fourth count of the complaint, relating to notice, "when we entered this stipulated conditional judgment." *Id.*

"A judicial admission is a statement made by a party or its counsel which has the effect

of withdrawing a fact from contention and which binds the party making it throughout the course

of the proceeding." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (per

curiam). "[A] statement must 'have sufficient formality or conclusiveness to be a judicial

admission'" and it must be a statement of fact rather than a legal conclusion. *Id.* (quoting *Berner*

*v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965)).  Not only must a statement "be a formal statement of fact," but it "must also be intentional, clear, and unambiguous."  *Id.* at 361.

Scottsdale's statements before the Second Circuit are not judicial admissions. They are conclusions of law.  The statements in Scottsdale's brief speak to the reach of the first summary judgment order and the SCJ, namely whether they render various counts of the complaint "moot" or "not viable."  Dkt. No. 108 at 4–5.  The effect of a judicial order or judgment is an issue of law, not fact.  Similarly, the issue of whether a claim is "covered" by an insurance policy is a question of law.  *See VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012) ("[I]nterpretation of an insurance agreement is a question of law.").  Regardless of what Scottsdale believed or stated about its claims at the time of argument before the Second Circuit, it cannot usurp the role of the Court in deciding questions of law.  Moreover, the Second Circuit rejected Scottsdale's legal positions, holding that Counts Two through Four of Scottsdale's complaint remained viable.  *Scottsdale Ins.*, 88 F.4th at 381.  It would not make sense for this Court to be bound by an interpretation of the law a higher court has stated is incorrect.  The statements cannot be judicial admissions because they express legal conclusions.  *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005) (statement that party assigned all its claims is not a binding judicial admission); *Rensselaer Polytechnic Inst. v. Amazon.com*, 2023 WL 6037877, at *6–7 (N.D.N.Y. Sept. 15, 2023) (statement that a party "transferred all substantial rights" is not a binding judicial admission); *Cheng v. D.O.J.*, 2024 WL 818101, at  (S.D.N.Y. Feb. 23, 2024) (whether Exemption 7(A) applies to a FOIA request cannot be a judicial

admission because it "is not a fact"), *report and recommendation adopted*, 2024 WL 1178986 (S.D.N.Y. Mar. 19, 2024).

Moreover, the statements are equivocal and conditional. Several of the statements, including those by counsel at oral argument, are explicitly conditional on events which did not occur or agreements which have been vacated. Counsel stated that "if this court agrees Mr. McGrath is an insured and affirms the first order" and "if you affirm the first order," Scottsdale would not contest coverage. Dkt. No. 137-13 at 3, 5. But the Second Circuit did not affirm the first order. Counsel moreover stated that Scottsdale "abandoned" its Fourth Count when it entered the SCJ. *Id.* at 5; *see* Dkt. No. 108 at 5 (similar). But the SCJ has been vacated on consent of the parties. Dkt. No. 116. Counsel's representations of what Scottsdale's legal position would be in other circumstances cannot bind Scottsdale in the circumstances here. The statements are not judicial admissions.

Scottsdale argues that counsel's statements should be entirely inadmissible at trial under Rules 408 and/or 403. Dkt. No. 132 at 18–22; Dkt. No. 162 at 18–19. The Court need not decide whether the statements are inadmissible under Rule 408, because they are inadmissible under Rule 403. The factfinder in this case must determine whether McGrath is entitled to insurance coverage from Scottsdale under the Policy. The material issues involve whether certain lawsuits or claims involve Wrongful Acts within the meaning of the Policy, whether the Subsidiary Exclusion applies, and whether the insurer had timely notice. *See* Dkt. No. 131 at 5–29. Counsel's statements that Scottsdale's claims are not "viable" after the Court's previous orders or that Scottsdale "concluded" after the previous orders that McGrath's claim was covered are of minimal probative value to these issues, because they do not "tend[] to prove or actually prove" facts such as the contents of the policy, McGrath's acts, or the notice provided to the

insurer.  *United States v. Jamil*, 707 F.2d 638, 642 (2d Cir. 1983).  They are legal conclusions as to the strength of Scottsdale's position.

The statements are highly prejudicial in that they invite the jury to take a position on the ultimate issue based simply on Scottsdale's purported position on the ultimate issue at a particular point in time and based upon particular conditions.  The inference is that if Scottsdale did not think its position was viable after the Court's previous orders, the jury should not think so either.  But witness testimony may not "usurp . . . the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see United States v. Awadallah*, 436 F.3d 125, 133–34 (2d Cir. 2006); *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993).  The jury must base its decision on whether coverage existed, not Scottsdale's beliefs about whether coverage existed.  Evidence which merely "tell[s] the jury what result to reach" creates a significant risk of unfair prejudice.  Fed. R. Evid. 704 advisory committee note to 1972 proposed rules; *see Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, *8–10 (S.D.N.Y. July 29, 2024); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 545–547 (S.D.N.Y. 2004); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *5 (S.D.N.Y. Jan. 28, 2014).[3]

Admitting these statements would also mislead the jury, confuse the issues, and waste time.  To avoid jurors inferring from counsel's statements that they should rule for McGrath, Scottsdale would be entitled to introduce evidence explaining how counsel's statements are

---

[3] Opinions discussing the prejudicial effect of testimony expressing conclusions as to the ultimate issues often concern witness testimony.  Here, Scottsdale's counsel is not an expert witness.  However, the cases speak to the general point that testimony can be prejudicial when it invites jurors to determine the ultimate issues based on a witness's opinion of those issues, rather than on the jurors' view of the facts.  This point applies with no lesser force here.

consistent with its current litigation position.  This would likely involve introduction of evidence

on the SCJ and the underlying proceedings before the Second Circuit, and possibly the testimony

of counsel regarding his remarks and Scottsdale's litigation strategy.  When admission of

statements of counsel requires "the trier of fact to explore other events at the prior [proceeding],"

this weighs against admissibility.  *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984); *see*

*Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (holding

evidence inadmissible when it risked "sideshow of mini-trials on collateral issues . . . that may

have only tangential bearing, if at all, to the issues and claims disputed in this case").  The issue

for the factfinder is whether coverage exists, not the reasoning behind Scottsdale and McGrath's

complex litigation decisions in this matter.  Admitting the statements of Scottsdale's counsel

would significantly confuse the issues.  Given that the evidence also has low probative value, it

is properly precluded under Rule 403.  *See, e.g.*, *Belabbas v. Inova Software Inc.,* 2019 WL

13258047, at *4 (S.D.N.Y. Oct. 1, 2019); *United States v. Kurland*, 2022 WL 2669897, at *7

(E.D.N.Y. July 11, 2022); *United States v. Dupree*, 620 F. App'x 49, at *54 (2d Cir. 2015)

(summary order).

## II.    Losses in the Hanford Personal Guaranty Action

McGrath argues that he should be able to seek damages in the form of his costs of

defending a lawsuit filed by Hanford in New York State Court, which he refers to as the

"Personal Guaranty Action."  Dkt. No. 137 at 16.  McGrath was not included in the settlement of

the counterclaims and third-party claims filed by Hanford in the Southern District of New York,

purportedly because he was not covered by Scottsdale.  McGrath suggests that if he had been

covered he would have been included in the Southern District settlement and Hanford would not

have sued him in state court; thus, Scottsdale is liable for "damages related to the action

regarding the personal guarantee."  Dkt. No 137 at 14–16.

This is the precise argument that the Court rejected in its second summary judgment order. Damages related to defending the state-court lawsuit are consequential damages. McGrath does not argue that Scottsdale was directly obligated by the contract to defend him in the state-court lawsuit, but rather that as a consequence of Scottsdale failing to cover him in the federal-court lawsuit, he suffered damages in the state-court lawsuit. As stated in the second summary judgment order, McGrath has not supported a claim for consequential damages. Dkt. No. 72. To support a claim for consequential damages under New York law, a party must at least show bad faith by the insurer or that the damages sought were within reasonable contemplation at the time of contracting. *Id.* at 27. McGrath has shown neither. *Id.* at 28–29. McGrath has not shown bad faith, and the contract is a standard "agreemen[t] to pay" where consequential damages are otherwise not recoverable. *Id.* at 29 (quoting *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N. Y.*, 886 N.E.2d 127, 130 (N.Y. 2008)). Therefore, the Court dismissed McGrath's prayer for consequential damages. *Id.* at 31.

That ruling is law of the case. "The law of the case doctrine, although not binding, 'counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons,' including, inter alia, 'the need to correct a clear error or prevent manifest injustice.'" *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)). The Court has already ruled that compensatory damages are not available. McGrath provides no "compelling" reason or "manifest injustice" that would require revisiting that ruling. He simply asserts that he seeks "to submit evidence of the full consequences of Scottsdale's denial" in order to prove consequential damages. Dkt. No. 137 at 14–16. That request is denied as contrary to the law of the case.

### III.    Evidence Regarding Wrongful Acts

McGrath argues that "Scottsdale should not be permitted to introduce any evidence of McGrath's purported wrongdoing, as it is irrelevant to the issue of coverage." Dkt. No. 137 at 7. For example, Scottsdale should be precluded from litigating whether McGrath actually breached a contract or committed a tort. *Id.* Scottsdale moves to exclude four exhibits listed by McGrath in the joint pretrial order in this case on the grounds that those documents are irrelevant and unduly prejudicial because they relate to a different lawsuit that has no relation to the coverage action. Dkt. No. 132 at 16–18. The documents are described as "News Article re Centaur Construction" (DX24), "PRC Observation report 1" (DX 25), "PRC Observation Report 1" (DX 26), and "Centaur Case Answer and Counterclaims" (DC 27). McGrath argues that "[e]vidence of Centaur's failure to perform the work on the Project is relevant to counter Scottsdale's argument that McGrath committed a wrongful act in failing to pay building 'contractors' in 2013–2014." Dkt. No. 156 at 11.

Evidence McGrath did or did not actually act wrongfully is precluded. It is not relevant and risks confusing the issues. McGrath's claim for coverage does not depend on whether he actually committed a wrongful act. Rather, "Wrongful Act" is defined in the policy to include "actual or alleged" wrongful acts. Dkt. No. 38-8 § 9. The insurer must defend when the insured is accused of wrongdoing, whether or not the insured is actually liable. *See Colon v. Aetna Life & Cas. Ins. Co*., 484 N.E.2d 1040, 1041 (N.Y. 1985). Whether the complaint in the Hanford Litigation alleges "Interrelated Wrongful Acts" within the meaning of the policy, *see* Dkt. No. 156 at 10, therefore turns on the allegations in the complaint, not the underlying facts, *see Century 21, Inc. v. Diamond State Ins. Co*., 442 F.3d 79, 83 (2d Cir. 2006) ("In determining whether a duty to defend exists, courts are to 'compare the allegations of the complaint to the terms of the policy.'" (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Group*, 545 N.E.2d

1206, 1208 (N.Y. 1989))).  Litigating whether McGrath was actually responsible for the acts alleged in the Hanford Litigation would only confuse the issues.  Scottsdale may not introduce evidence of McGrath's actual wrongdoing, and McGrath may not introduce evidence, including the Centaur documents, that there was no wrongdoing.  McGrath suggests the Centaur documents are necessary to counter a potential argument by Scottsdale that McGrath committed a wrongful act.  *Id.*  This is unnecessary given that McGrath is precluded from making such an argument.

However, to the extent that McGrath's motion seeks to preclude "the Hanford Complaint's allegations," the motion is denied.  Dkt. No. 137 at 10.  As McGrath himself states, the insurer's liability depends on whether "the pleadings allege a covered occurrence."  Dkt. No. 137 at 7.  It is therefore impossible to determine liability without considering what was alleged in the complaint.  McGrath suggests that jurors may be prejudiced merely by the fact that allegations have been made.  *Id* at 10.  This can be addressed through appropriate jury instructions.

## IV.  Scottsdale's Remaining Motions in Limine

### A.  Evidence of Scottsdale's Financial Condition and Its Ownership By Nationwide Mutual Insurance Company

Scottsdale moves to preclude any evidence of, or reference to, its financial condition. Dkt. No. 132 at 5–6.  It also moves to preclude McGrath from making references to it as a "big corporation" or words to that effect, from referring to himself as an "underdog," or from mentioning Scottsdale's parent corporation, Nationwide Mutual Insurance Company ("Nationwide").  *Id.* at 6–8.  It argues that Scottsdale's financial condition is irrelevant under Federal Rule of Evidence 401, as is the fact that it is owned by Nationwide (which is not a party to this action), and that references to relative wealth, size, and Scottsdale's parent would be

unduly prejudicial and confusing and would result in undue delay under Federal Rule of Evidence 403. *Id.* at 5–8.[4]

McGrath does not oppose Scottsdale's motion to exclude evidence of Scottsdale's financial condition "as long as this preclusion works both ways." Dkt. No. 156 at 1. He argues that Scottsdale should not be permitted to offer evidence of its financial health to show that it is a reputable or trustworthy company or that financial hardships hindered its ability to fulfill its contractual duties, and that Scottsdale should be precluded from offering evidence of McGrath's wealth or his association with other companies, restaurant projects, or investment and development projects. *Id.* at 1–2. As to Scottsdale being a big company and the subsidiary of Nationwide, McGrath argues that both are "simple facts" that are not central but are "important detail[s]" that will inevitably be in front of the jury because one of Scottsdale's witnesses and several of the documents McGrath seeks to offer in evidence refer to Nationwide. *Id.* at 2–3. McGrath argues that he should be permitted certain "rhetorical flourishes," including that "Nationwide is on your side." *Id.* at 3.

As acknowledged by both parties, Scottsdale's financial health is not relevant to whether Scottsdale owes McGrath duties under the insurance contract. Neither is McGrath's. The size of Scottsdale or Nationwide is also not relevant to Scottsdale's duties under the contract, and evidence on this point may run the risk of prejudicing the jury. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[E]vidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses." (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994))). Nationwide is not a party to this action,

---

[4] Scottsdale also moves to preclude "phrases, jokes, or puns related to Nationwide and Scottsdale's advertising, including whether they are 'on your side.'" *Id.* at 8.

and its slogans and advertising are irrelevant.  Therefore, references to the financial condition of the parties and parent companies are excluded, as are references to the size of Scottsdale and Nationwide and phrases, jokes or puns regarding their advertising, including Nationwide being "on your side."

### B.    Evidence of Scottsdale's Claims Processes in this Case and in General

Scottsdale moves to exclude any evidence referring to an alleged conspiracy between Scottsdale and Watershed to hide the Watershed Policy from McGrath, to make untrue statements in Scottsdale's declination letter, and to refuse to acknowledge McGrath's claims under the Watershed Policy, or, in general, opinions of Scottsdale's claims practices.  Dkt. No. 132 at 8–11.  Scottsdale further moves to exclude references by Defendants' counsel and witnesses regarding "bad faith," "deceptive" or "unscrupulous" conduct, and similar phrases regarding Scottsdale's declination of coverage and claims handling practices.  *Id.* at 11. Scottsdale argues that its claims practices and its determination on prior claims is irrelevant to McGrath's sole remaining counterclaim for breach of the duty to defend, *id.* at 9, that such evidence would be prejudicial and confusing to the jury under Rule 403, *id.* at 10, and that references to the claim practices as being in bad faith would be impermissible lay opinion testimony under Federal Rule of Evidence 701, *id.* at 11.

McGrath argues that evidence of the Original Notice and Scottsdale's First Denial of Coverage in January 2017 are relevant to Scottsdale's affirmative defense of late notice.  He argues that his position is that "(i) the Original Notice provided Scottsdale with sufficient notice under the Policy; (ii) Scottsdale demonstrated that it received sufficient notice by expressly denying coverage of McGrath in its Coverage Letter (First Denial of Coverage) dated January 2017 and noting that McGrath should be forwarded the denial of coverage . . .; and (iii) Scottsdale waived the Policy's notice provisions by denying McGrath coverage in January

2017." Dkt. No. 156 at 4–5.  It argues that his Late Notice is excused because he did not have notice he was an Insured under the Policy because Scottsdale failed to disclose and produce the policy in violation of its discovery obligations in the underlying litigation in this District.  *Id.* at 5.  He also argues that he should be permitted to offer evidence of the relationship between Scottsdale and Watershed because it is relevant to the Late Notice issue.  *Id.* at 5.

The contentions of the parties are largely compatible.  McGrath correctly notes that in response to Scottsdale's claim that notice was untimely, he must be able to present facts suggesting "that any alleged delay was excusable."  Dkt. No. 156 at 5.  He specifically states he should be entitled to produce evidence that he learned of the Policy when Scottsdale's attorneys appeared at a mediation hearing in the Hanford Litigation on November 14, 2018, that he then demanded the Policy, and that the next day Scottsdale provided McGrath with the Policy for the first time.  *Id.*  These facts are relevant in explaining why he did not provide notice in 2016, and do not require referring to Scottsdale as "deceptive" or "unscrupulous."  They are admissible.

However, opinions that Scottsdale's conduct was deceptive or in bad faith and information suggesting that they "failed to provide the Policy previously in violation of Rule 26," Dkt. No. 156 at 5, are not admissible.  The Court's second summary judgment order dismissed McGrath's claims for bad faith liability.  Dkt. No. 72 at 10.  The only remaining issue is whether Scottsdale breached the duty to defend.  That issue does not depend on Scottsdale's good or bad faith, but on whether it fulfilled its contractual obligations.  The timing of notice is relevant, because notice is a condition precedent under the Policy.  But McGrath has not suggested any reason that his inability to give notice due to Scottsdale's bad faith, as opposed to merely because he was unaware of the Policy, would affect Scottsdale's duties under the Policy.  Rather, such evidence would serve primarily to "inflame members of the jury," creating the risk

that the jury would find against Scottsdale due to a belief about its general immorality rather than on the facts relevant to McGrath's claims. *Dunham v. Lobello*, 2023 WL 3004623, at *5 (S.D.N.Y. Apr. 19, 2023); *cf. Old Chief v. United States*, 519 U.S. 172, 180 (1997) (in the criminal context, noting the risk that a jury will convict "because a bad person deserves punishment" rather than based on the evidence presented).

Scottsdale asserts that McGrath should be precluded from evidence regarding its claim handling practices because such practices are not relevant. Dkt. No. 131 at 9. McGrath does not object to this, but merely states that Scottsdale should also be precluded from offering such evidence, Dkt. No. 156 at 10, which is compatible with Scottsdale's argument that such practices are not relevant. Therefore, both parties are precluded from offering evidence of Scottsdale's claim handling practices.

### C.    Evidence of Settlements and Judgments

Scottsdale moves to exclude any evidence or reference to settlement agreements McGrath entered into in any of the Actions and any judgments entered against him as outside the scope of the pleadings and irrelevant, as well as unduly prejudicial. Dkt. No. 132 at 11-12. McGrath responds that the settlements and judgments are relevant in determining his damages, "including pre- and post-judgment interest," because Hanford filed a state-court lawsuit against him that it "would never have brought . . . had Scottsdale not wrongly denied coverage on January 5, 2016." Dkt. No. 156 at 7.

As stated above, McGrath may not seek consequential damages in light of the Court's decision in the second summary judgment motion. Therefore, evidence of settlements and judgments may not be introduced to support McGrath's consequential damages from being sued in state court.

### D.    Evidence of Attorney's Fees

Scottsdale moves to exclude (1) evidence of, or reference to, the amount of attorney's fees and costs on the grounds that they are an element of damages to be determined by the court and not a jury, Dkt. No. 132 at 12; (2) in the alternative, evidence of McGrath's attorney's fees and costs incurred in this case because McGrath has not yet prevailed on Scottsdale's claims for declaratory relief and evidence of such fees would be irrelevant and prejudicial, *id.* at 12–13; (3) evidence of, or reference to, the attorney's fees and costs of Castlegrace and AH DB because Castlegrace and AH DB have not asserted counterclaims against Scottsdale and do not seek damages in this action, *id.* at 13–14; and (4) evidence of, or reference to, attorney's fees and costs related to the bankruptcy petition and the Second Personal Guaranty Action in that they are outside the scope of the pleadings and therefore irrelevant and unduly prejudicial, *id.* at 14–16.

McGrath responds that attorney's fees are an element of his loss and thus properly considered by the factfinder.  Dkt. No. 156 at 7–8.  He does not dispute that his attorney's fees related to this litigation are to be decided by the court and not by the jury and only if he prevails on Scottsdale's request for a declaratory judgment.  *Id.* at 8–9.  He argues that evidence of the attorney's fees of Castlegrace and AH DB are properly admitted because they were defendants in the actions together with McGrath and were represented by the same attorneys, so their attorney's fees and costs cannot be divided from McGrath's attorney's fees and costs, *id.* at 9, and that the fees and costs incurred in connection with the Bankruptcy Petition and the Second Personal Guaranty action filed by Hanford, are properly included in McGrath's Loss, *id.* at 9–10.

In *McGuire v. Russell Miller, Inc.*, the Second Circuit held that when determining a contractual claim for attorney's fees, "the jury is to decide at trial whether a party may recover such fees," but "the judge is to determine a reasonable amount of fees."  1 F.3d 1306, 1313 (2d Cir. 1993).  Scottsdale invokes this holding to suggest that the proper amount McGrath may

recover for his defense in each action where Scottsdale had a duty to defend should be determined by the Court.  Dkt. No. 132 at 12.  However, *McGuire* concerned a claim for breach of contract plus attorney's fees arising out of that claim.  1 F.3d at 1309.  It did not decide a case "where a claimant seeks contractual indemnification for fees incurred in a separate litigation against a third party."  *Id.* at 1317 (Jacobs, J., concurring).

This distinction is meaningful.  In the situation presented by *McGuire*, attorney's fees are akin to costs.  *See Murphy v. Stowe Club Highlands*, 171 Vt. 144, 163 (2000) ("When we are considering how attorneys' fees incurred in a case will be borne in that same case, we are drawing a line between damages and court costs, which are traditionally determined by the court."); Fed. R. Civ. P. 54(d) (allowing a claim for attorney's fees, like costs, to be made by motion after judgment); *see also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) ("[A] claim for attorney's fees is not part of the merits of the action to which the fees pertain. . . . At common law, attorney's fees were regarded as an element of 'costs' awarded to the prevailing party.").  This supports *McGuire*'s holding that liability for attorney's fees under the contract is a legal question, but once liability is established the amount of those fees "presents equitable issues of accounting."  1 F.3d at 1314.[5]

By contrast, "where previously incurred attorneys' fees are sought as the measure of compensatory damages in a breach of contract suit," and not as a matter "collateral to and

---

[5] The additional authority cited by Plaintiff either follows the same fact pattern as McGuire or is unclear.  *See VR Optics, LLC v. Peloton Interactive, Inc.*, 2021 WL 1198930 (S.D.N.Y. Mar. 30, 2021) (deciding motion for contractual attorney's fees as akin to costs when the fees related to the same action in which breach of contract was found), *aff'd*, 2023 WL 2031213 (Fed. Cir. Feb. 16, 2023); *Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 22024043, at *2–3 (S.D.N.Y. Aug. 27, 2003) (after holding that the case would be tried to the Court, stating that the Court would determine the appropriate amount of attorney's fees and costs after the contract phase of the trial).

separate from a decision on the merits," the quantum of attorney's fees is properly presented to and decided by the jury. *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1116 (10th Cir. 2009); *see also* Fed. R. Civ. P. 54(d) (noting that claim for attorney's fees may not be made by motion when "the substantive law requires those fees to be proved at trial as an element of damages"). A breach of the duty to defend is a breach of the insurance contract, and the standard measure of damages is that the "injured party should be put in the position they would have been in had the contact been performed." *Narragansett Elec. Co. v. Am. Home Assur. Co.*, 999 F. Supp. 2d 511, 523 (S.D.N.Y. 2014) (quoting *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 724 N.E.2d 699, 704 (Mass. 2000)). The attorney's fees paid by the insured in the prior action thus is simply the measure of the amount the plaintiff needs to be made whole from the insurer's breach of the duty to defend. When the action is "at bottom, a legal action for compensatory damages resulting from a breach of contract[,] [t]hat the measure of damages happens to be attorneys' fees does not in and of itself change the nature of [the] claim." *Simplot*, 563 F.3d at 1116. Attorney's fees in this context are not equitable costs, but the measure of plaintiff's damages on a canonically legal claim for breach of contract. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.").

Scottsdale, as the insurer, would have the right to require that McGrath, as the insured, be put to its proof to establish the measure of its damages in front of a jury. That it is McGrath, rather than Scottsdale, that seeks to have the jury determine the damages suffered in the form of attorney's fees expended that should have been covered by Scottsdale makes no difference in the legal analysis. The case presents none of the practical difficulties discussed by the majority and concurrence in *McGuire* of requiring "[p]revailing counsel . . . disclose to the jury the need for *in*

*limine* motions, the protective effectors employed in discovery, the pursuit of settlement, or the

toll and calculation required to build a case that may have been promoted to the same jury as

simple or self-evident," 1 F.3d at 1317 (Jacobs, J., concurring); *see also id.* at 1316 (majority

opinion), or of requiring a jury "to keep a running total of fees as they accrued through

summations and then predict future fees from post-trial proceedings and motions," *id.*

      This conclusion is consistent with the authority in this Circuit assuming, albeit without

discussion, that where fees incurred in a separate or independent action are claimed as an

element of damages, the quantum or the reasonableness of the fees is for the jury and not, except

where not subject to any genuine dispute, for the court. *See Hugo Boss Fashions, Inc. v. Fed.*

*Ins. Co.*, 252 F.3d 608, 623–24 (2d Cir. 2001) (affirming decision to deny new trial based on jury

verdict of attorney's fees and costs in a separate action); *Harleysville Worcester Ins. Co. v.*

*Wesco Ins. Co., Inc.*, 314 F. Supp. 3d 534, 551–52 (S.D.N.Y. 2018) (Nathan, J.) (granting

summary judgment on attorney's fees in separate action when "no reasonable jury could find that

Harleysville was not entitled to reimbursement for its claimed defense costs"), *aff'd sub nom.*

*Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90 (2d Cir. 2019); *CGS Indus.,*

*Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 76 (2d Cir. 2013) (parties stipulated to defense

costs in a separate action "rather than go to trial to determine the amount of damages"); *Olin*

*Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016) (holding that "issues of

material fact preclude summary judgment for either party on the reasonableness of [plaintiff's]

defense costs" in an underlying action, and setting the matter for trial); *Columbus McKinnon*

*Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 159 (S.D.N.Y. 2018) (same); *Com. Union*

*Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 639 F. Supp. 1401, 1402 (S.D.N.Y. 1986) (noting

that "a jury trial was held . . . to determine the reasonable costs of defense" in an underlying

action).[6]

Here, the legal fees McGrath incurred as an Insured in defending a Claim are part of his

Loss.  The Policy states that "Loss means damages, judgments, settlements, pre-judgment or

post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by

Directors and Officers" in connection with a covered Claim.  Dkt. No. 38-8 § 7.  Costs, Charges

and Expenses includes "reasonable and necessary legal costs, charges, fees and expenses

incurred by any of the Insureds" in defending Claims.  *Id.* § 3.   The alleged Claims here have to

do with the bankruptcy proceeding and Hanford Litigation.  Dkt. No. 14 ¶ 158.  McGrath may

---

[6] In other cases, courts appear to have conducted their own factfinding and reasonableness analysis as to the attorney's fees in the separate action as if they were costs in the instant action. *See U.S. Underwriters Ins. Co. v. Weatherization, Inc*., 21 F. Supp. 2d 318, 326 (S.D.N.Y. 1998); *Hervochon v. Iona Coll*., 2019 WL 2451431 (S.D.N.Y. Feb. 15, 2019), *report and recommendation adopted*, 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019); *PriMed Pharms., LLC v. Starr Indem. & Liab. Co.,* 2024 WL 3842077 (S.D.N.Y. Aug. 16, 2024).  The courts have done so generally without analysis or relying on cases which, as discussed above, are distinguishable, and thus are not persuasive authority.  A court may grant summary judgment on damages when there is no genuine issue of fact, *see Harleysville*, 314 F. Supp. 3d at 551–52, may determine the proper amount of damages when by agreement the issue is tried to the bench, or may equitably determine an application for attorney's fees and costs when a statute or a contract provides for fee-shifting of the fees of the matter before the court, *see Optima Media Grp. Ltd. v. Bloomberg, L.P*., 2022 WL 992828 (S.D.N.Y. Mar. 31, 2022), *appeal dismissed* (June 23, 2022).  However, courts must be mindful of the different standards applicable to each situation and may not determine a demand for damages as if it were a motion for costs.  *See Columbus McKinnon Corp.*, 367 F. Supp. 3d at 159 (noting on motion for summary judgment that it is viewing evidence of the reasonableness of fees "in the light most favorable to Plaintiff,"); *Cowan v. Codelia*, 50 F. App'x 36, 39 (2d Cir. 2002) (implying that exclusive reliance on "the lodestar calculation appropriate for fee-shifting determinations" is not an appropriate method of determining fees which "were being awarded as damages"); *cf. Olin Corp.*, 218 F. Supp. 3d at 228 (noting that under New York law, "[w]here an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable").

properly introduce legal costs in those proceedings as relevant to his Loss, i.e. his damages for breach of contract.[7]

McGrath's legal costs in the state-court proceeding are not recoverable and are therefore precluded, because they concern consequential damages which are unavailable as stated above. McGrath's attorney's fees in this proceeding also may not be introduced as evidence. Pursuant to the rule of *McGuire*, such fees are akin to costs and if necessary and appropriate will be determined equitably by the Court.[8] Finally, legal fees of Castlegrace, AH DB, or other non-McGrath entities are not relevant and are precluded, because only McGrath is a Director or Officer who claims to be an Insured under the Policy.

### E.    The Parties Settlement Discussions

Scottsdale moves to exclude any reference to or evidence of the settlement negotiations between the parties as irrelevant, unduly prejudicial, and protected from use to show liability under Federal Rule of Evidence 408. Dkt. No. 132 at 23. McGrath does not oppose the motion. Dkt. No. 156 at 13. Accordingly, the motion is granted.

### F.    Charts and Summaries of Legal Fees

Scottsdale moves to exclude summary charts prepared by McGrath of its attorney's fees (DX 37, DX38, DX39, DX40, and DX42). Dkt. No. 132 at 23. McGrath asserts that he will

---

[7] Even if evidence of legal fees in the bankruptcy proceeding is otherwise admitted, Scottsdale seeks to limit this evidence to legal fees related to the Trustee's Demand upon McGrath and subsequent adversary proceeding, rather than related to the bankruptcy proceeding generally. Dkt. No. 132 at 14–15. Although Scottsdale asserts that attorney's fees related to the bankruptcy proceeding generally were not pled, the counterclaims do allege that McGrath was "exposed to the payment for his defense . . . arising out of the Rocky Aspen Bankruptcy Proceeding." Dkt No. 14 ¶ 158. Given the state of the factual record at this time, the Court reserves decision as to whether Scottsdale's duty to defend, if one existed, is limited to the Trustee's Demand against McGrath or could encompass the bankruptcy proceeding as a whole.

[8] The Court reaches no conclusion as to whether McGrath would be entitled to fees for this proceeding if he were the prevailing party.

obtain custodial affidavits to support the admissibility of the exhibits.  Dkt. No. 156 at 14.  The Court reserves decision on this motion pending McGrath's acquisition of supporting affidavits.

## V.    McGrath's Remaining Motions in Limine

### A.    Preclusion from Offering Expert Testimony

McGrath argues that Scottsdale should be precluded from offering expert testimony either from an expert or from a lay witness for failure to discuss the identity of an expert witness. Dkt. No. 137 at 21–22.  He additionally states that Scottsdale should not be allowed to elicit expert opinion testimony from specific witnesses "in the guise of a lay witness testimony."  *Id.* at 22.  Scottsdale agrees that it will not call an expert, and disputes that certain lay witnesses will provide disguised expert witness testimony.  Dkt. No. 152 at 13–14.

The parties agree that lay witnesses may not offer expert testimony.  Scottsdale states that specific lay witnesses mentioned by McGrath, namely Michael Zartman, Paul Tomasi, and Eric Weissman, will testify as lay witnesses who have personal knowledge of relevant facts.  *Id.* These witnesses are therefore not precluded from testifying.  If the named witnesses or any other lay witnesses testify as experts or offer testimony that goes beyond permissible lay opinion testimony, McGrath may raise an objection at that time.

### B.    Advice of Counsel Defense

McGrath argues that Scottsdale should be precluded from offering evidence that it acted consistent with the advice of counsel.  Dkt. No. 137 at 24–25.  The motion is granted.  It is not clear how advice of counsel could be a proper defense to a breach of the duty to defend, given that such a defense would allow Scottsdale to deny coverage with impunity so long as they do so through counsel.  Even if such a defense were available, Scottsdale has stated it will not make such a defense, and allowing it to be asserted without the opportunity for relevant discovery would be prejudicial.  *See In re Matter of Certain Claims & Noticing Agents' Receipt of Fees in*

*Connection With Unauthorized Arrangements With Xclaim Inc*., 647 B.R. 269, 289–90 (Bankr. S.D.N.Y. 2022) (noting that reliance on advice of counsel waives attorney-client privilege, and describing the evidentiary showing required).

### C.    Adverse Inference Regarding Contents of Claim File

McGrath seeks an adverse inference instruction or other sanction related to Scottsdale's failure to timely produce the claim file.  Dkt. No. 137 at 16–17.  This motion is denied pursuant to the Court's order of October 2, 2024, resolving the same issue.  *See* Dkt. No. 143.

### VI.    Motion for Judicial Notice

Scottsdale moves for the Court to take judicial notice of documents filed in other court proceedings, namely *In re Rocky Aspen, LLC*, No. 16-12194-EEB (Bank. D. Colo), *Walters v. AH DB Kitchen Investors*, LLC, Adv. No. 18- 01149 (Bank. D. Colo); *Rocky Aspen Management 204, LLC v. Hanford Holdings, LLC v. Citron, et al.* (S.D.N.Y.), and *Hanford Holdings, LLC v. McGrath*, No. 651028/2021 (N.Y. Sup.).  Dkt. No. 135.  McGrath does not object to the Court taking judicial notice, but requests that the documents be admitted as filed rather than as characterized by Scottsdale.  Dkt. No. 157 at 2.  The Court will take judicial notice of the actual filings in the above-captioned proceedings and statements therein, not their characterization by Scottsdale, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).[9]  Pursuant to Federal Rule of Evidence 201(f), the Court will entertain requests from the parties regarding how the jury should be instructed on the noticed facts.  Fed. R. Evid. 201(f).

---

[9] The Court will not at this time take judicial notice of the SCJ and Second Circuit materials as requested by McGrath, Dkt. No. 157 at 2–3, given that it has ruled those materials inadmissible.

## CONCLUSION

Scottsdale's motions in limine are GRANTED IN PART and DENIED IN PART.

McGrath's motions in limine are GRANTED IN PART and DENIED IN PART.  McGrath's

motion for judicial notice is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. Nos. 132, 135, and 137.

SO ORDERED.

Dated: October 17, 2024
      New York, New York

                                    LEWIS J. LIMAN
                            United States District Judge